UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Dennis A. Cedar                                  Case No. 12-51059
    d/b/a Troy Tooling Technologies, LLC       Chapter 11
    d/b/a DAC Tooling Tech.                        Hon. Walter Shapero
    d/b/a DAC Consulting

    Debtor.

**FIRST DAY MOTION OF THE DEBTOR PURSUANT TO
SECTIONS 105(a), 361, 362, 363 AND 552 OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULE 4001(b) FOR ENTRY OF INTERIM
AND FINAL ORDERS (A) AUTHORIZING USE OF CASH COLLATERAL,
(B) GRANTING ADEQUATE PROTECTION,
<u>AND (C) SCHEDULING A FINAL HEARING ON THE MOTION</u>**

Dennis A. Cedar, as Debtor and Debtor-in-Possession, by his proposed counsel, Strobl & Sharp, P.C., files this motion ("Motion") for immediate entry of (i) an interim order (the "Interim Order") attached as Exhibit A (a) authorizing the Debtors, pursuant to Sections 105(a), 361, 362, 363 and 552 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 (b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Michigan (the "Local Rules"), to use cash collateral in the ordinary course of operations (b) granting and affirming, to the extent necessary, the adequate protection proposed to be given by the Debtor in connection with the Internal Revenue Service (the "IRS") pre-petition secured claims, and (c) scheduling a final hearing on this Motion (the "Final Hearing") and (ii) a final order (the "Final Order") on substantially the same terms as the Interim Order, in

connection with the Debtor's businesses Troy Tooling Technologies, LLC ("Troy Tooling") and DAC Tooling Tech ("DAC Tooling"). The Debtor respectfully represents as follows:

**STATUS OF THE CASE AND JURISDICTION**

1. On May 1, 2012 (the "Petition Date"), the Debtor filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code.

2. The Debtor has continued in possession of these assets and has continued to operate his business as Debtor-in-Possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

3. No request has been made for the appointment of a trustee or examiner and no official committee has yet been established in this case.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are Sections 105(a), 361, 362, 363, 364 and 552 of the Bankruptcy Code, Bankruptcy Rule 4001(b) and Local Rule 4001-2.

**Background and History**

5. Troy Tooling is a single member limited liability company formed by Dennis Cedar in the State of Michigan on July 26, 1999, and is currently in good standing under the laws of the State of Michigan.

6. Troy Tooling develops alternate material and process for automotive and aircraft OEM tooling requirements, specializing in the design and build of Fluid Cell Stamping Tools.

7. Dennis Cedar serves as the Chief Executive Officer for Troy Tooling Technologies, LLC.

8. DAC Tooling Tech. is a sole proprietorship, owned solely by Dennis Cedar.

9. Dennis Cedar, doing business as DAC Tooling Tech. has been issued vendor supplier numbers from several OEMs.

10. Prior to the Petition Date, the Internal Revenue Service ("IRS") filed Notices of Tax Liens against the Debtor and Troy Tooling Technologies, LLC for unpaid taxes in a combined approximate amount in excess of $900,000.00.

11. As of the Petition Date, the Debtor's principal hard assets consisted of the following:

| ASSETS | VALUE |
| --- | --- |
| Troy Tooling WIP | $75,000.00 |
| Troy Tooling Personal Property | $115,000.00 |
| DAC Tooling Accounts Receivable | $16,000.00 |
| Dennis Personal Residence | $50,000.00 (equity after mortgages) |

12. The value of the Debtor's Troy Tooling and DAC Tooling Assets arises primarily through the ongoing operations and Debtor's relationships with his customers. Troy Tooling's and DAC Tooling's work for customers continues to grow which will enable the Debtor to maintain his positive cash-flow going forward, provided that Troy Tooling's DAC Tooling's operations continue.

13. In the alternative, if Troy Tooling and DAC Tooling are forced to cease operations, their going-concern value will be destroyed, and the value of the Debtor's existing Troy Tooling and DAC Tooling Assets will diminish as customers will seek to resource their work to other suppliers.

14. Furthermore, the Debtor believes that any cessation of Troy Tooling's operations would substantially diminish its ability to collect on accounts receivable from its clients.

## REQUEST FOR USE OF CASH COLLATERAL

15. Debtor is confident that Troy Tooling's and DAC Tooling's post-petition operations will be profitable and that he will be able to demonstrate his ability to generate sufficient cash flow during these bankruptcy proceedings and beyond in order to reorganize.

16. Attached as Exhibit B is a list of Debtor's expenses for the next 30 days. The Debtor anticipates that its expenses will remain constant over the next 90 days.

17. Attached as Exhibit C are Debtor's projections of income for the next 90 days.

18. The Debtor asserts that, through the continued operations of Troy Tooling an DAC Tooling, he will generate positive cash flow and likely increase profitability, and will thereby be able to provide the IRS with adequate protection through the payments and continuing liens being offered below. See the Affidavit of Dennis Cedar attached as Exhibit D.

## ADEQUATE PROTECTION

19. As adequate protection for the secured interests that the IRS claims in the cash collateral of Debtor and to the extent that the Debtor uses such cash collateral and does not replace same, Debtor offers replacement liens in all types and descriptions of collateral, which are created, acquired or arise after the Petition Date. The priority of these replacement liens shall remain consistent with the priority of the lien held by the IRS prior to the Petition Date. The IRS shall receive a replacement lien in all of Debtor's assets to the same extent and priority as existed on the Petition Date.

20. The Debtor further proposes monthly adequate protection payments to the IRS in the amount of $3,750.00 beginning on June 1, 2012, and continuing thereafter on the first business day of each consecutive month until such time as a plan is confirmed.

21. On the basis of the adequate protection submitted above, the Debtor submits that it should be granted authority to use its cash collateral.

22. In utilizing its cash collateral, Debtor will only use funds for those expenses that are necessary for the operations of the business of the Debtor.

## CONCLUSION

23. The Debtor contends that without authority to use the cash collateral, he will suffer immediate and irreparable harm that would be detrimental to the interests of the estate and to all of his creditors.

24. Furthermore, without the use of cash collateral, the Debtor will be unable to pay vendors who are critical to the operation of Debtor's business. Without the use of cash collateral, clients may not receive their services, which could lead to substantial administrative claims asserted against the estate.

25. The entry of an order authorizing Debtor's use of cash collateral will minimize disruption of the Debtor's business and will increase the possibility of a successful rehabilitation, and is, therefore, in the best interests of the estate and its creditors.

## NOTICE

26. Notice of this Motion has been given by email, facsimile and/or overnight mail delivery to the United States Trustee for the Eastern District of Michigan, counsel for the Internal Revenue Service, and the twenty largest creditors pursuant to Local Rule 4001-2(d)(l).

27. Pursuant to Local Rule 4001-2(c)(4) the Debtors shall serve (i) the United States Trustee for the Eastern District of Michigan; (ii) counsel for the Internal Revenue Service; (iii) the parties included on the Debtor's list of twenty (20) largest unsecured creditors; and (iv) those parties that have requested notice pursuant to Bankruptcy Rule 2002 with notice of this Motion.

**WHEREFORE**, the Debtors respectfully request the Court enter the Order attached as Exhibit A and grant such other and further relief as is just and proper.

Respectfully submitted:

| **STROBL & SHARP, P.C.** | **UNITED STATES ATTORNEY'S OFFICE** |
|---|---|
| /s/ Lynn M. Brimer | /s/ John W. Stevens |
| Lynn M. Brimer (P43291) | John W. Stevens (P58184) |
| Meredith E. Taunt (P69698) | Special Assistant United States Attorney |
| 300 East Long Lake Road, Suite 200 | P.O. Box 330516, Stop 31 |
| Bloomfield Hills, MI 48304-2376 | Detroit, Michigan 48332-6516 |
| 248 540-2300; fax 248 205-2786 | (313) 237-6419 |
| Attorneys for Debtor | john.w.stevens@irscounsel.treas.gov |
| lbrimer@stroblpc.com | Dated: May 2, 2012 |
| Dated: May 2, 2012 | |

EXHIBIT "A"

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

In re:

| | |
|---|---|
| Dennis A. Cedar | Case No. 12-51059 |
|     d/b/a Troy Tooling Technologies, LLC | Chapter 11 |
|     d/b/a DAC Tooling Tech. | Hon. Walter Shapero |
|     d/b/a DAC Consulting | |

Debtor.

## INTERIM ORDER (A) AUTHORIZING USE OF CASH COLLATERAL (B) GRANTING ADEQUATE PROTECTION; AND (C) SCHEDULING A FINAL HEARING ON THE MOTION

Upon consideration of the Debtor's First Day Motion (the "Motion") for the Entry of Interim Order (the "Interim Order") (a) authorizing the Debtor, pursuant to Sections 105(a), 361, 362, 363, 364 and 552 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Michigan (the "Local Rules"), to use of Cash Collateral, (b) granting adequate protection, and (c) scheduling a final hearing on this Motion (the "Final Hearing") in connection with the Debtor's business Troy Tooling Technologies, LLC, as more fully described in the Motion; and the Court having jurisdiction pursuant to Sections 157 and 1334 of Title 28 of the United States Code to consider the Motion and the relief requested therein; and venue being proper in this Court pursuant to Sections 1408 and 1409 of Title 28 of the United States Code; and it appearing that no other or further notice need be provided; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtor,

7
J:\DOCS\85147\002\MOTBRF\SB286008.DOC
12-51059-wsd    Doc 10    Filed 05/02/12    Entered 05/02/12 14:43:23    Page 7 of 19

his creditors, and all parties in interest; and the Court having heard the evidence and statements of counsel regarding the Motion and having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein:

**THE COURT HEREBY FINDS:**

A. On May 1, 2012 (the "Petition Date"), the Debtor filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has continued in possession of his property and has continued to operate his business as a Debtor-in-Possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. There has been no request for the appointment of a Chapter 11 trustee or examiner and, no Official Committee of Unsecured Creditors has been appointed.

B. Debtor requires the use of the Cash Collateral, as defined in the Motion, for the maintenance and preservation of its assets, for the operation of his businesses, Troy Tooling Technologies, LLC ("Troy Tooling") and DAC Tooling Tech ("DAC Tooling") in the ordinary course, and for payment of the expenses attendant thereto.

C. The relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtor's business and the management and preservation of his assets, and is otherwise necessary to avoid immediate and irreparable harm to the Debtor's estate pending a final hearing on the Motion.

D. The Debtor has provided notice of the initial hearing on the Motion by serving counsel for the Internal Revenue Service (the "IRS"), the Office of the United States Trustee, the parties included on the Debtor's list of twenty (20) largest unsecured creditors, and those parties that have requested notice pursuant to Bankruptcy Rule 2002 on the Petition Date pursuant Local Rules 4001-2 and 9013-1. Such notice is appropriate, adequate and proper under the

circumstances of this Case as set forth in the Motion and as presented to this Court and is in accordance with Fed. R. Bankr. P. 4001(b) and Local Rule 4001-2(d)(l).

E.  On the basis of the above and foregoing, it is in the best interests of the Debtor's estate that the Debtor be authorized to use the Cash Collateral subject to and on the terms and conditions of this Interim Order.

F.  The Court has jurisdiction over this Case and the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This Interim Order is entered in a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(M).

In light of the foregoing, **IT IS HEREBY ORDERED BY THE COURT** as follows:

1.  The Motion is granted.

2.  Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to such terms in the Motion.

3.  *Authorization to Use Cash Collateral.* The Debtor is hereby authorized to use Cash Collateral subject to the terms of this Interim Order. The Debtor may use Cash Collateral for necessary operating expenses and in the amounts described in the budget attached to the Motion as Exhibit B, as may be modified, supplemented, or extended from time to time upon the written agreement of the Debtor and the Internal Revenue Service (as so modified, supplemented or extended, the "Budget"). It shall not be used for any other purpose or in any amounts in excess of the amounts described in the Budget without the written consent of the Internal Revenue Service and without further approval of the Court. The Debtor is authorized to use Cash Collateral only to pay necessary operating expenses, which include, but are not limited to: payment of current taxes incurred after the Petition Date; any and all property taxes incurred after the Petition Date; wages and salaries; fees of professionals, subject to appropriate Court

approval; rent; supplies and materials; insurance premiums; necessary maintenance; utilities; and other ordinary course charges necessary for the Debtor's operations, including the fees required by 28 U.S.C. §1930.

4. *Adequate Protection.* The Internal Revenue Service is granted a replacement lien in the post-Petition Date assets of the Debtor, including accounts receivable, in the same extent, validity and priority as they existed on the Petition Date to the extent of the diminution of such secured creditors' collateral caused by Debtor's use of cash collateral. No liens are granted in any Chapter 5 causes of action or their proceeds hereby by the Debtor to the secured creditors. The Internal Revenue Service shall receive adequate protection payments in the amount of Three Thousand Seven Hundred Fifty and 00/100 (3,750.00) Dollars beginning on the First day of June, 2012 and, unless otherwise adjusted by the Court, on the First Business Day of each month thereafter during the pendency of this case. In addition, to protect the Internal Revenue Service from any diminution in the value of its collateral, the Internal Revenue Service shall have an administrative expense claim under Bankruptcy Code § 507(b) for any unpaid adequate protection payments. In the event the Debtor fails to make any of the adequate protection payments as set forth in this paragraph, the respective creditor whose payment has been defaulted shall provide notice thereof to counsel for the Debtor as set forth below. Upon the failure of the Debtor to cure such default within ten (10) days of notice, Debtor's right to use cash collateral under this Order and the Final Order shall cease upon the filing of an Affidavit of Default by the respective creditor.

5. *Reservation of Rights.* The Interim Order shall in no way limit the rights of the Debtor, any official unsecured creditors committee or any other party in interest to investigate and/or challenge the validity and/or priority of the liens of the Internal Revenue Service in the

Cash Collateral, or the right of the Internal Revenue Service to seek additional adequate protection or to assert its rights and claims against the Debtor and any third parties. Debtor specifically reserves the right to seek a reduction in the monthly adequate protection payment that is made to the Internal Revenue Service.

6. *Notice.* Within 24 hours of the entry of this Interim Order, the Debtor shall serve by first class U.S. mail, postage prepaid, a copy of the Motion and this Interim Order upon the following: (i) the Office of the United States Trustee for the Eastern District of Michigan; (ii) counsel for the Internal Revenue Service, (iii) the parties included on the Debtor's list of twenty (20) largest unsecured creditors; and (iv) those parties that have requested notice pursuant to Bankruptcy Rule 2002.

7. The deadline to file an objection to the proposed order is 15 days from the entry of the order, except that an official committee may file objections within 15 days after it is served with the entered order. If an objection is timely filed, the final hearing will be held. If no objection is timely filed, the interim or preliminary order may become a final order. Any objection to the continued effectiveness of this Interim Order or to a final order under similar terms to those terms set forth herein shall be in writing and shall be filed with the Court and served by overnight delivery on each of the follow persons or entities:

(a) Counsel for the Debtors: Strobl & Sharp, P.C., 300 E. Long Lake Rd., Suite 200, Bloomfield Hills, MI 48304. Attention: Lynn Brimer;

(b) Counsel for the Internal Revenue Service, John W. Stevens, Special Assistant United States Attorney, P.O. Box 330516, Stop 31, Detroit, Michigan 48332-6516

(c) Office of the United States Trustee, 211 W. Fort Street, Suite 700, Detroit, Michigan 48226.

8. *Final Hearing.* No objection will be considered unless timely filed and served. A final hearing on the Motion will be held on the _____ day of May, 2012 at: _____a.m./p.m., as the same may be continued or adjourned by the Bankruptcy Court.

9. This Court shall retain jurisdiction over any and all matters arising from or related to the interpretation or implementation of this Interim Order.

EXHIBIT "B"

**Estimated Monthly Budgets**

**Dennis Cedar:**

| | |
|---|---|
| Homeowners Insurance | $ 181.00 |
| Groceries | $1,000.00 |
| Mortgage | $1,923.00 |
| Equity Line – PNC | $ 800.00 |
| Property taxes | $ 920.00 |
| DTE | $ 375.00 |
| Cable Television/Internet | $ 336.00 |
| Consumers Power | $ 175.00 |
| HAP | $ 180.00 |
| Repairs/maintenance (incl. lawn serv.) | $ 200.00 |
| Home owners assn. | $ 30.00 |
| Healthcare | $ 400.00 |
| Transportation | $ 300.00 |
| Water/sewage | $ 130.00 |
| Miscellaneous | $ 200.00 |
| TOTAL EXPENSES: | $7,150.00 |

**DAC Tooling Tech**

| | |
|---|---|
| Automobile expense | $ 206.00 |
| Office supplies | $ 375.00 |
| Utilities/Telephone | $ 50.00 |
| Marketing | $ 420.00 |
| Shop supplies | $ 460.00 |
| COGS/Materials | $29,200.00 |
| Bank charges | $ 50.00 |
| TOTAL EXPENSES | $30,761.00 |

**Troy Tooling Technologies, LLC:**

| | |
|---|---|
| Officer Compensation | $ 3,700.00 |
| Salary Expenses Other Employees | $ 8,754.00 |
| Holiday/Vacation wages | $ 1,130.00 |
| Payroll services | $ 1,295.00 |
| Payroll taxes | $ 4,400.00 |
| UIA taxes | $ 250.00 |
| Insurance | $ 1,200.00 |
| Shipping charges Insurance | $ 725.00 |
| Automobile and Truck Expense | $ 880.00 |
| Utilities (gas, electric, phone, water) | $ 2,800.00 |
| Rent | $ 7,500.00 |
| Travel and Entertainment/marketing | $ 900.00 |
| Repairs and Maintenance | $ 500.00 |
| Shop supplies | $ 6,250.00 |
| Supplies, office expense, printing. | $ 550.00 |
| Legal & Accounting | $ 3,750.00 |
| Adequate Protection Payment | $ 2,500.00 |
| Other: Bank Charges & Miscellaneous | $ 150.00 |
| TOTAL EXPENSES | $47,234.00 |

EXHIBIT "C"

Projected Monthly Revenue

**Dennis Cedar**

Wages/salary:      $3,700.00
Social Security:   $2,424.00
Pension income:    $1,106.00
          Total:   $7,230.00

**DAC Tooling Tech.**

Monthly Sales:     $32,000.00
          Total:   $32,000.00

**Troy Tooling Technologies, LLC**

Monthly Sales:     $50,300.00
          Total:   $50,300.00

Exhibit "D"

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

| | |
|---|---|
| Dennis A. Cedar | Case No. 12-51059 |
|     d/b/a Troy Tooling Technologies, LLC | Chapter 11 |
|     d/b/a DAC Tooling Tech. | Hon. Walter Shapero |
|     d/b/a DAC Consulting | |

    Debtor.

---

**AFFIDAVIT OF DENNIS A. CEDAR, CHIEF EXECUTIVE OFFICER OF TROY TOOLING TECHNOLOGIES, LLC, IN SUPPORT OF FIRST DAY MOTION OF THE DEBTOR PURSUANT TO SECTIONS 105(A), 361, 362, 363, 364, AND 552 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001(b) FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, AND (C) SCHEDULING A FINAL HEARING ON THE MOTION**

**STATE OF MICHIGAN** )
                               ) SS:
**COUNTY OF OAKLAND** )

**Dennis A. Cedar, being duly sworn, deposes and says:**

1. I am the Debtor and Debtor-in-Possession in the above captioned bankruptcy case, as well as the Chief Executive Officer of Troy Tooling Technologies, LLC ("Troy Tooling"), a Michigan corporation. In my capacity as CEO, I am familiar with the day-to-day operations, business affairs, corporate structure and books and records of the Troy Tooling. I am authorized to submit this affidavit (the "Affidavit") on behalf of Troy Tooling.

2. I make this Affidavit to assist the Court and other parties in understanding the circumstances that necessitated the First Day Motion Pursuant to Sections 362, 363, 364, and 552 of the Bankruptcy Code and Bankruptcy

Rule 4001(b) for Entry of Interim and Final Orders (A) Authorizing the Use of Cash Collateral; (B) Granting Adequate Protection; and (C) scheduling a Final Hearing on the Motion (the "Motion").

3. Troy Tooling is operating its business and managing the property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for an appointment of a trustee and no official committee has yet been appointed by the Office of the United States Trustee.

4. Except as otherwise indicated, all facts set forth in this Affidavit as based on my personal knowledge, information supplied to me by other employees of Troy Tooling and/or professionals retained by the Troy Tooling, information I learned through review of relevant documents, or on my opinion based upon my experience and knowledge of Troy Tooling's operations and financial conditions. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

## General Background

5. On May 1, 2012 (the "Petition Date"), I commenced with this Court a voluntary case under Chapter 11 of the Bankruptcy Code. I am authorized to continue to operate my businesses as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. No request for appointment of a Chapter 11 trustee or examiner has been made and, as of the date hereof, no official committee has been appointed.

7. Troy Tooling is a single member limited liability company formed by Dennis Cedar in the State of Michigan on July 26, 1999, and is currently in good standing under the laws of the State of Michigan.

8. Troy Tooling develops alternate material and process for automotive and aircraft OEM tooling requirements, specializing in the design and build of Fluid Cell Stamping Tools.

9. Troy Tooling currently employs a labor force of approximately 4 employees and 0 contract laborers.

10. Prior to the Petition Date, the Internal Revenue Service ("IRS") filed Notices of Tax Liens against the Debtor and Troy Tooling for unpaid taxes in a combined approximate amount in excess of $900,000.00.

### The Debtor's Need for Cash Collateral

11. It is necessary for the Troy Tooling to use its Operating Cash in order to maintain its business and the going concern value for the benefit of this bankruptcy estate and its creditors. Of immediate urgency is the need to fund Troy Tooling's payroll, which is due by May 4, 2012.

12. The Debtor proposes to use the Cash Collateral for the payment of Troy Tooling employee salaries, payroll, taxes, and other general operating and working capital purposes in the ordinary course of Debtor's business to ensure that Debtor's patients are protected.

13. The Debtor has prepared and provided Prepetition Secured Creditors an initial 30 day Projected Budget and such budget has been reviewed by the Debtor and its management.

14. Debtor and Prepetition secured claimants have engaged in negotiations for the consensual use of the Cash Collateral. An agreement has been reached insofar as Debtor is prepared to provide the IRS with monthly adequate protection payments to the IRS in the amount of $3,750.00 beginning on June 1, 2012, and continuing thereafter on the first business day of each consecutive month until such time as a plan is confirmed. As additional adequate protection, the Debtor is willing to grant to the Prepetition secured claimants a replacement lien in post-petition accounts

receivable of the Debtor to secure their liens in the Cash Collateral, to the extent they are valid.

15. The Debtor has and will continue to need the use of the Cash Collateral to pay immediate necessary ordinary course of business expenditures. These expenditures will enable the Debtor to continue operating its business in the ordinary course, immediately fund the Troy Tooling's payroll so that it can continue paying its employees, and maintain and safeguard the Pre-Petition Collateral. The Debtor's use of the Operating Cash is also necessary to maintain the value of the Pre-Petition collateral and to provide the Debtor with working capital necessary to maintain operation of the business. Absent the use of Cash Collateral, the Debtor does not have working capital adequate to operate its business, pay its employees, or even maintain operations necessary to protect its patients.

16. Immediate irreparable harm will occur to the Debtor, its employees, its creditors and its estate if the Debtor is unable to use its Cash Collateral. In the absence of a court order authorizing the use of the Cash Collateral, the Debtor will be unable to meet its payroll and other operating expenses and will be forced to cease operations immediately, rather than continuing efforts to maximize value for its estate and creditors.

17. Pursuant to 28 USC § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

FURTHER THE DEPONENT SAYETH NOT

_____
Dennis A. Cedar
Debtor
CEO, Troy Tooling Technologies, LLC